IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DHARMENDRA KUMAR
   *Plaintiff*,

v.

FIRST ABU DHABI BANK USA N.V.,
   *Defendant.*

Civil Action No. ELH-20-1497

**MEMORANDUM OPINION**

Dharmendra Kumar, the self-represented plaintiff, has filed an employment discrimination action against First Abu Dhabi Bank USA N.V. (the "Bank"). *See* ECF 1 (the "Complaint"). Plaintiff, an Asian male, alleges that he experienced discrimination and retaliation on the basis of race, age, disability, and genetic information while employed by the Bank from January 29, 2019 through July 1, 2019.

In the Complaint, Kumar asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*; discrimination on the basis of disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*; and the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. §§ 2000ff *et seq.*

Defendant has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF 6. The motion is supported by a memorandum of law (ECF 6-1, collectively the "Motion") and two exhibits. ECF 6-3; ECF 6-4. Plaintiff opposes the Motion (ECF 8), supported by a memorandum of law (ECF 8-1, the "Opposition") and six exhibits. ECF 8-2 to ECF 8-7. Defendant has replied. ECF 9.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.   Background[1]

Mr. Kumar worked for the Bank in Washington, D.C. from around January 29, 2019 through July 31, 2019.  ECF 6-1; ECF 6-3 ("EEOC Charge").  Plaintiff alleges that he has "an anxiety disorder as well as hypertension and diabetes."  ECF 1 at 6.  Moreover, at the time of the alleged discrimination, Kumar was over 40 years of age.  *Id.*

Plaintiff claims that the Chief Executive Officer ("CEO") of the Bank "used hostile and abusive language with him" on three instances: February 22, 2019, March 25, 2019, and July 9, 2019.  *Id.*  At another unspecified time, plaintiff posits that he experienced age discrimination by the "head of IT operation[s]," because he asked "[p]laintiff['s] age at [the] work place" even though he knew that plaintiff was "over the age of 40."  *Id.*  Finally, plaintiff alleges that the "[d]efendant [was] hostile with [him] and asked [a] personal family question on" May 9, 2019.  *Id.*

As a result of the "multiple [instances of] harrassement [sic] [and] age descrimination [sic] at [the] work place," plaintiff claims that he "has constant chest pain."  *Id.*  He posits that he was admitted to the hospital "for acute chest pain" and "other health issues and treated" in mid-April 2019.  *Id.*  Moreover, plaintiff contends that his family has "suffered…because of this pain," including his "spouse and kids."  *Id.*

---

[1] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Further, the Court may consider documents attached to the Complaint or Motion "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Kumar filed a formal Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2019.  ECF 6-3.[2]  Kumar checked the boxes on the form for discrimination based on race, retaliation, age, and disability.  *Id.*  He did not check color, sex, religion, national origin, genetic information, or "other."  *Id.*  Kumar specified that the earliest date of discrimination occurred on January 28, 2019, and the latest date was August 1, 2019.  *Id.*

In the Charge, plaintiff stated as follows, *id.*:

> I was employed with the above-named employer since January 28, 2019. I was then terminated on August 1, 2019. My job classification was Head of IT.
> Since the beginning of my employment I was subject to a hostile work environment by CEO Husam Arabiat and IT Manager Kobi Otchere. They not only cussed at me but asked how old I was on a multitude of occasions and made comments that those younger than me would charge less money for work. This ongoing harassment caused me a great deal of stress, and on or around July 25, 2019 I emailed HR requesting disability forms and they never responded. On August 1, 2019 I was terminated, and then went to HR to complain about the harassment I had endured.
> I believe I have been discriminated and retaliated against in violation of the Americans with Disabilities Acts of 1990, as amended. I believe I have been discriminated against due to my age (44) in violation of the Age Discrimination in Employment Act of 1967, as amended. I believe I have been discriminated against due to my race (Asian), in violation of Title VII of the Civil Rights Act of 1964, as amended.

The EEOC mailed a "Dismissal and Notice of Rights" letter to plaintiff on March 2, 2020. ECF 6-4 ("Right to Sue Letter") at 1.  Plaintiff's suit was docketed on June 5, 2020.  ECF 1.

## II.    Standards of Review

### 1.  Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re*

---

[2] Kumar does not mention the Charge or the Right to Sue Letter in his Complaint. However, defendant has attached a copy of both documents to its Motion.  And, plaintiff has not disputed the authenticity of either document.  As discussed, *infra*, I may consider these exhibits.

*Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

4

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Bing v. Brio Sys., LLC*, 959 F.3d

605, 616 (4th Cir. 2020) (citation omitted); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Edwards*, 178 F.3d at 243.  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint

and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As noted, the Motion is supported by two exhibits: the Charge (ECF 6-3) and the Right to Sue Letter (ECF 6-4). These documents are integral to the Complaint and there is no dispute about their authenticity. In resolving the Motion, I may consider the EEOC materials, as these documents are integral to the suit. *See, e.g.*, *Webb v. Potomac Elec. Power Co.,* TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Hwy. Admin*., JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc*., 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

Plaintiff's Opposition is supported by six exhibits. ECF 8-2 to ECF 8-6. These include Kumar's emails and other personal documents. Because the documents are not referenced in the Complaint and are not publicly available materials, I will not consider these exhibits in my analysis of plaintiff's claims.

In reviewing the Motion, I am mindful that plaintiff is self-represented. Therefore, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

## III.   Discussion

Defendant argues that plaintiff's claims are time-barred because he failed to file suit within 90 days of receipt of the Right to Sue Letter from the EEOC. ECF 6-1. In addition, defendant contends that the Complaint cannot withstand challenge under Rule 12(b)(6) because it fails to

allege "any unlawful discriminatory conduct" or "that any unlawful discriminatory conduct caused any adverse employment action."  ECF 6-1 at 2.  Moreover, the Bank asserts that plaintiff fails to state a viable cause of action upon which relief may be granted under each cause of action.  *Id.*

Mr. Kumar does not address the GINA claim in his Opposition.  *See* ECF 8.  But, plaintiff contends that defendant's remaining arguments are unavailing.  *Id.*

### A.  Timeliness

The EEOC sent its Right to Sue letter to plaintiff on March 2, 2020.  ECF 6-4 at 1.  Kumar asserts in his Opposition that he received the Right to Sue Letter on March 6, 2020.  ECF 8-1 at 4. Accordingly, Kumar had to file suit by June 4, 2020, which is 90 days after March 6, 2020.  But, Kumar's suit was docketed on June 5, 2020.  *See* Docket.

The statutes on which Mr. Kumar relies require a plaintiff to commence a court action within 90 days of receipt of his right to sue notice from the EEOC. *See* 42 U.S.C. § 12117 (ADA); 42 U.S.C. § 2000e-5 (Title VII); 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. §§ 2000ff (GINA).   The ninety-day period begins to run on the date that a claimant receives the right to sue notice.  *See*, *e.g.*, *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) ("Miss Davis received the right to sue letter on the second EEOC charge (disability, etc.) on October 1, 1996.  Thus, the 90 day statute of limitations began to run on October 1, 1996 and expired on December 30, 1996."); *Harvey v. City of New Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987) (finding ninety-day limitations period under Title VII began to run on the day of receipt of a right-to-sue letter from the EEOC); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010) ("[T]he 90-day [limitations] period begins on the date the claimant receives the right-to-sue letter.").

"The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (finding Title VII plaintiff's failure to file suit within ninety days did not warrant equitable tolling); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (affirming application of equitable tolling to ADA's ninety-day filing requirement).

Generally speaking, the doctrine of equitable tolling "has been applied in two … kinds of situations." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *accord, e.g.*, *Crabill*, 423 F. App'x at 321. "In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant." *Harris*, 209 F.3d at 330. "In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Id.* (citation omitted).

In the Fourth Circuit, "as a settled general rule, the burden of proving an affirmative defense is on the party asserting it." *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir. 2007). However, "[t]he plaintiff bears the burden of establishing the timeliness of the filing of [his] complaint whe[n] it is contested by the defendant." *Cepada v. Board of Education of Baltimore County*, WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010); *see also Darden v. Cardinal Travel Center*, 493 F. Supp. 2d 773, 776 (W.D. Va. 2007).

In his Opposition, Kumar argues that his Complaint was filed in a "timely manner" because he sent the Complaint to the Court on May 30, 2020, "through USPS next day delivery." *Id.* And, he claims that the package was "schedule[d] to deliver on June 1st, 2020 as suggested by USPS." *Id.*; *see* ECF 8-2 (USPS Receipt dated May 30, 2020 for delivery on June 1, 2020). But, when

10

USPS tried to deliver his envelope on June 1, 2020, "they could not get access to the location due to [the] Covid 19 situation."  ECF 8-1 at 4.

Kumar also cites to guidance issued by the Maryland State judiciary on April 3, 2020. Apparently, the State extended deadlines as a result of the COVID-19 pandemic. *Id.*[3]

I will construe plaintiff's contentions under principles of equitable tolling.

Plaintiff mailed his Complaint when the Courthouse was open but operating at limited capacity as a result of the COVID-19 pandemic. Pursuant to Standing Order 2020-11, issued May 22, 2020, the Courthouse remained closed to the public and most employees were working remotely. Although physical access to the Courthouse was restricted, the Court remained open for filings, and self-represented litigants could deposit papers in drop boxes at the Courthouse.  *See U.S. District Court for the District of Maryland, Standing Order 2020-11.*  Nevertheless, it is quite likely that that there were delays in accepting and processing mail at the Courthouse at that time, because so many employees were working remotely.

Based on the USPS tracking number that plaintiff provides in his Opposition, the USPS tracking history indicates that delivery was attempted to the federal Courthouse on June 1, 2020, at 11:30 a.m.  However, the USPS worker could not gain access to the delivery location. The tracking history also indicates that the envelope was delivered on June 4, 2020, at 11:32 a.m.  *See* USPS Tracking, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=EJ014831564US.[4]

---

[3] The guidance and protocols of the Maryland State judiciary do not apply here, as the federal judiciary is separate from the State.

[4] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court

Accordingly, it appears that the suit was timely received by the Court, although the Clerk did not docket it until June 5, 2020.   In any event, and alternatively, due to the COVID-19 pandemic and the restrictions at the Courthouse, the pandemic constituted an extraordinary circumstance, beyond plaintiff's control, which impeded his ability to file the Complaint on time. *Harris*, 209 F.3d at 330.   Therefore, the time bar does not warrant dismissal of the suit.

### B.  Title VII Claims

### 1.  Title VII Generally

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e–2.   The phrase "terms, conditions or privileges of employment" is "an expansive concept."   *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted).   Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding.   42 U.S.C. § 2000e-3; *see e.g.*, *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F.3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

---

or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The USPS tracking history is publicly available. Therefore, I may consider it in resolving this issue.

## 2.  Discrimination

Plaintiff alleges that he was subject to discrimination, in violation of Title VII.  Defendant moves to dismiss this claim, asserting that Mr. Kumar has failed to make allegations in the Complaint that "relate in any way to alleged discrimination."  ECF 6-1 at 8.

To state a claim of race or sex discrimination, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'"  *Goode v. Cent. Va. Legal Aid Soc.*, Inc., 807 F.3d 619, 626 (4th Cir. 2015) (citation omitted) (race discrimination); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019) (per curiam) (race discrimination); *Dortch v. Cello P'ship*, 770 F. App'x 643, 646 (4th Cir. 2019) (sex discrimination).

It appears that plaintiff attempts to state a claim for disparate treatment because of his race based on allegations in his EEOC charge.  *See* ECF 6-3.  However, the Complaint does not identify Mr. Kumar's race or allege that he is a member of a protected class.  It also does not allege facts about his job performance or treatment different from that of other employees.  It follows that plaintiff has not alleged a plausible discrimination claim.

## 3.  Retaliation

To state a claim of retaliation under Title VII, a plaintiff must allege: "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action."  *Perkins v. International Paper Company*, 936 F.3d 196, 213 (4th Cir. 2019); *see Strothers*, 895 F.3d at 327; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06

(4th Cir. 2005).  The plaintiff must establish retaliation, either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.- E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

As indicated, a plaintiff must first allege that he engaged in protected activity.  The Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937.  "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airport Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

The second element is that of an "adverse action."  In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added).  In a retaliation claim, the standard for an adverse action is more expansive than for a substantive discrimination claim.  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").  Therefore, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Strothers*, 895 F.3d at 327.

However, Title VII does not serve as "'a general civility code for the American workplace.'" *Id.* at 68 (citation omitted).  Thus, it "does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68).  Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir.

2019).  Rather, to qualify as a materially adverse action in the retaliation context, the plaintiff must show that the defendant's action "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington Northern*, 548 U.S. at 68 (citation omitted); *see Evans*, 936 F.3d at 195.  And, "there must be 'some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.'"  *Ray*, 909 F.3d at 670 (quoting *Adams*, 789 F.3d at 431; *see Burlington Northern*, 548 U.S. at 67.

The Fourth Circuit has found that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions.  *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).  The reassignment of job functions may also constitute an adverse action.  *Young v. Montgomery Cty.*, PX-18-2054, 2019 WL 1596992, at *4 (D. Md. Apr. 15, 2019) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998)).  But, "[a]bsent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII."  *Boone*, 178 F.3d at 256.  At a minimum, the plaintiff must demonstrate that "the reassignment had some significant detrimental effect on" the employee.  *Id.*

To allege the requisite causation under Title VII, the plaintiff must plead that the retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  In other words, Title VII requires the plaintiff to allege that the "protected activity was a but-for cause of the alleged adverse action by the employer."  *Nassar*, 570 U.S. at 362.

Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).  Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the

protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'"  *Id.* (citation omitted).  Indeed, a lapse of two-and-a-half months between the protected activity and an adverse employment action "is sufficiently long so as to weaken significantly the inference of causation," although it does not preclude the plaintiff from establishing causation.  *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

Plaintiff does not include in the Complaint any allegations to support his retaliation claim. In the Opposition, Mr. Kumar posits that, as he alleged in the Charge, the retaliation started after he asked the CEO to stop harassing him.  ECF 8-1 at 6.  And, Mr. Kumar asserts that in retaliation, the CEO forced him to "[w]ork late in [the] office" and "asked plaintiff Mr. Kumar to remove IT head designation from his signature." *Id.*

Mr. Kumar does not allege that he was demoted, discharged, had a decrease in pay, or any other consequences that qualify as adverse actions. And, the fact that Mr. Kumar had to remove his job title from his email signature does not indicate that he was demoted. Moreover, he does make any other allegations required to plead a claim of retaliation.

Accordingly, Mr. Kumar fails to state a retaliation claim.

## C.  ADEA Claim

Congress enacted the ADEA in 1967 "'to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment.'" *EEOC v. Balt. Cty.*, 904 F.3d 330, 333-34 (4th Cir. 2018) (quoting 29 U.S.C. § 621(b)) (alteration in *EEOC*).  The statute makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

16

age." 29 U.S.C. § 623(a)(1); *see Hartman v. Univ. of Md. at Balt.*, 595 F. App'x 179, 181 (4th Cir. 2014) (per curiam); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  The ADEA's protections are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).  Plaintiff, who was older than 40 when he worked at the Bank, was within the ADEA's protection at all relevant times.

To state a claim of employment discrimination under the ADEA, a plaintiff must allege: "(1) the plaintiff was over 40 years of age at the relevant time; (2) he was performing his job duties satisfactorily; (3) he was nevertheless subjected to an adverse employment action; and (4) substantially younger individuals with comparable qualifications were treated more favorably. *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413-14 (4th Cir. 2010); *see also* 29 U.S.C. § 623(a).

The Supreme Court has ruled that, unlike Title VII, the ADEA does not permit "a mixed-motives age discrimination claim."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Rather, given that ADEA liability hinges on discrimination "*because* of . . . age," 29 U.S.C. § 623(a)(1) (emphasis added), the plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action."  *Gross*, 557 U.S. at 177; *see also Hartman*, 595 F. App'x at 181.

Of course, a plaintiff does not need to establish a prima facie case of discrimination at the motion to dismiss stage. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *accord Buchanan v. Delta Air Lines, Inc*., 727 F. App'x 639, 641 (11th Cir. 2018) (per curiam) (applying *Swierkiewicz* to ADEA claim). That said, a complaint must still put forth sufficient factual allegations to "support a reasonable inference that the decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586; *see also Swierkiewicz*, 534 U.S. at 511.

17

Generously construing the Complaint's allegations in plaintiff's favor, they do not state a claim under the ADEA.  To be sure, plaintiff adequately alleges that he falls within the sweep of the ADEA.  *See* ECF 1 at 6 (alleging that plaintiff was over the age of 40 at the time of the harassment).  Significantly, however, though, there are no allegations in the Complaint that younger employees were treated more favorably than plaintiff.  *Compare Smith v. Potomac Elec. Power Co*., TDC-19-1764, 2020 WL 1904707, at *4-5 (D. Md. Apr. 17, 2020).  Indeed, the only allegation concerning plaintiff's age is that the head of IT asked plaintiff about his age at work.  ECF 1 at 6.  But, this lone remark does not give rise to the inference that any of his colleague's conduct was because of Kumar's age.  *Compare Baqir v. Principi*, 434 F.3d 733, 734-35, 744-45 (4th Cir. 2006) (inferring actionable age-based animus against a 60-year-old interventional cardiologist based on the statement that "interventional cardiology is meant for people in their thirties").

In sum, there are no factual allegations in the Complaint to support the inference that Mr. Kumar experienced discrimination because of his age.

### D.  ADA Claim

The ADA, 42 U.S.C. § 12101 *et seq*., was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  *Id.* § 12101(b)(1), (b)(2).  To that end, the statute "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131-12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182-12189." *A Helping Hand,*

*LLC v. Baltimore County*, 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'"). A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" *Id.* § 12102(1); *see Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)). Major life activities include, but are not limited to, "sleeping, walking, standing, lifting, bending . . . working" and "reproductive functions." 42 U.S.C. § 12102(2)(A)-(B). An individual with a "a record of such an impairment," or who is "regarded as having such an impairment," will be considered to have a disability. *Id.* § 12102(1)(B)-(C).

Under Title I of the ADA, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B). Likewise, the ADA bars the discharge of a qualified employee because he is disabled. *Summers*, 740 F.3d at 328. In addition, discrimination under the ADA includes "not making reasonable accommodations to the

known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]"  *Id.* § 12112(b)(5)(A); *see Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013).

Mr. Kumar claims that he suffers from anxiety, hypertension, and diabetes.  ECF 1 at 6. However, he does not allege any additional facts that he has a disability that would meet the requirements for ADA protections.  However, even if plaintiff could be considered a "qualified individual" under the ADA, he does not allege that he requested any employment accommodations from his employer or was discriminated against in any other way on the basis of his disability. Therefore, plaintiff's ADA claim is subject to dismissal.

### E.  GINA Claim

"GINA 'prohibit[s] discrimination on the basis of genetic information with respect to health insurance and employment.'"  *Echols v. Living Classrooms Found., Inc.*, WDQ-13-03156, 2014 WL 6835559, at *7 (D. Md. Dec. 2, 2014) (quoting Pub. L. No. 110–233, § 2, 122 Stat. 881 (2008)).  Like Title VII, it also prohibits employers from retaliating against employees for engaging in protected civil rights enforcement activities.  42 U.S.C. § 2000ff-6(f).

Defendant contends that Kumar does not allege any facts that implicate GINA.  ECF 6-1 at 10.  And, it argues that, even if plaintiff did allege discrimination based on genetic information, "the Court would lack subject matter jurisdiction over such claim because he failed to raise this with the EEOC."  *Id.*

GINA requires exhaustion of administrative remedies prior to bringing a lawsuit in federal court.  *See* 42 U.S.C. § 2000ff-6(a)(1); *see also Echols*, 2014 WL 6835559, at *7 (dismissing GINA claim for lack of subject matter jurisdiction where plaintiff's EEOC Charge did not include

GINA claim).  GINA's exhaustion requirement also functions as a jurisdictional bar in federal courts where plaintiffs have failed to comply with it.  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013).  Even when, as here, a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process.  *See*, *e.g.*, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Unlike with Kumar's other claims, he did not indicate in the Charge that he believed defendant discriminated against him on the basis of genetic information.  *See* ECF 6-3.  And, nothing set forth in the "Particulars" of the Charge is reasonably related to a claim on this basis. *Id.*  Therefore, Kumar has failed administratively to exhaust the GINA claim.

Moreover, the suit does not include any allegations about discrimination based on genetic information in the Complaint.  *See* ECF 1; ECF 6-3.  And, plaintiff does not address the GINA claim in his Opposition or oppose its dismissal.  *See* ECF 8-1.  Therefore, he has waived any opposition to the defendant's argument. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (same).

For these reasons, I shall dismiss the GINA claim, with prejudice.

## IV.   Conclusion

For the reasons stated above, I shall grant the Motion (ECF 6).  Because plaintiff is self-represented, I shall grant him leave to amend all claims, with the exception of the GINA claim,

21

due within 28 days of the date of this Order.  If plaintiff fails to file an amended complaint in the

time provided, I shall direct the Clerk to close the case.

      An Order follows, consistent with this Memorandum Opinion.


Date:   November 13, 2020                                  /s/
                                        Ellen Lipton Hollander
                                        United States District Judge

22